### Cobb's Petition

556

*A. G. Rutherford,* for exceptant.

*G. A. Garratt,* for respondent.

SWOYER, P. J., October 19, 1935.—On October 8, 1935, respondent C. B. Cobb filed with the Commissioners of Wayne County his petition for printing the name of the said C. B. Cobb on the official ballot for the general election of 1935 as the candidate of the Progressive Party for county commissioner. This petition contained 110 names; pasted thereto and preceding the affidavit was an additional sheet containing the names of 20 electors; another additional sheet containing the names of 22 electors was attached thereto following the affidavit. It is conceded that this last mentioned list of 22 signatures is void, since it followed the affidavit; it is also conceded that the petition was accepted and filed by the county commissioners and that a total of 145 signatures (being two percent of the highest vote cast at the last general election) was required for a valid nomination petition for a preëmpted or independent party. Subsequently, on October 14, 1935, the respondent C. B. Cobb filed with the county commissioners two additional sheets containing 196 names, which were by him attached to the original petition filed. The official ballots are not yet printed.

One Clarion S. Hauser, a qualified elector of Wayne County, filed exceptions to the said petition, and it is upon these exceptions and the answer thereto that the matter is before the court.

The exceptant contends that inasmuch as to secure the printing of the name of an independent candidate upon the official ballot would require the signature of 145 electors and as the original petition of Mr. Cobb contained

only 130 valid signatures, the petition was absolutely void and must be stricken off; he also contends that the additional papers filed on October 14th were not amendments to the original petition, but were additional petitions, void because filed after the final date (October 8th) for such filing. Respondent contends that the original petition was filed in good faith and that it lacked the requisite number of names only because of misinformation as to the number necessary; that the petition is not invalid but merely defective; that if defective it may be amended, and that the additional papers filed constituted such amendment.

We are forced to sustain the contention of the exceptant.

The Act of July 9, 1919, P. L. 855, sec. 3, provides:

"In the case of all other nominations, the number of qualified electors of the electoral district or division signing such nomination paper shall be at least two per centum of the largest entire vote for any officer elected at the last preceding election in the said electoral district or division for which said nomination papers are designed to be made."

The Act of June 10, 1893, P. L. 419, as amended by section 2 of the Act of July 9, 1919, P. L. 832, reads as follows:

"It shall be the duty of the officer or officers, to whom any nomination certificate or paper is brought for the purpose of filing, to examine the said certificate or paper, and if it lacks sufficient signatures or be otherwise manifestly defective it shall not be filed".

This section of the act is explicit: under its provisions a nomination petition which lacks the required number of signatures cannot be filed. It being admitted that the paper filed by Mr. Cobb on October 8th contained only 130 and that the minimum required number of signers to such a petition was 145, obviously the petition should not have been filed, nor can the good faith of the officer filing it validate the petition.

The respondent cites, among other cases, In re Challenger's Nomination, 8 Dauph. 23, in which opinion the court stated:

"The only objection for which the court is authorized to decree the certificate or paper void is that which goes to the right of the party to file the same."

The original paper did not contain a sufficient number of names and therefore the respondent had no right to file it. The right that he had was to file a nomination paper containing the signatures of 145 or more electors.

This is in accordance with all of the existing cases:

In re Nomination Papers of James F. Lavery, 37 York 103, Rossiter, P. J., sets forth his opinion as follows:

"This case came on to be heard on petition [to strike off nomination papers] . . . The facts are found as follows:

"First. That on October 8, 1923, James F. Lavery, the respondent, filed nomination papers of the 'Peoples' Party or Policy' for county commissioner of Erie County, Pennsylvania.

"Second. That on October 10, 1923, Joseph F. Rogan and Joseph Y. Moorhead filed their 'objections to nomination papers' to the above term and number, reciting among other things,

" 'That your petitioners object to said nomination papers filed as above set forth, for the following reasons:

" 'That a large number of the names of the electors on said petition do not appear to be written by the person or persons designated, and whose names appear upon said petition.

" 'That a large number of names and groups of names on said petition appear to be written in the handwriting of the same individual as respects each particular group of names . . .

" 'That said petition does not contain a sufficient number of valid signatures as required by the Act of Assembly in such case made and provided.' "

The court then stated its conclusions (p. 104) :

"1. That the Act of 1919, P. L. 855, requires that nomination papers shall be signed by qualified electors of the electoral district for which the nomination is made, and by at least 2% of the largest entire vote for any officer elected at the last preceding election in said election district for which the nominations are designed to be made. . . .

"3. That there being 156 names not complying with said provision, they should not be counted or computed on said petition. . . .

"6. That said nomination or petition for nomination, shall be deemed to be void and of no effect, and be rejected."

That case is stronger than the instant case, in that there more than the necessary number of signatures were upon the nomination paper filed, of which the court struck off 156 for various reasons and then held that the remaining signatures did not constitute the requisite number to form a valid petition, while in the case of Mr. Cobb the original number filed was insufficient. The court did not consider this to be an amendable defect.

In King's Nomination Paper, 12 Pa. C. C. 161, the court says:

"The first paper remains, but it contains only forty-seven names, and this is not enough. The Act requires the signatures of qualified electors of the district equal to 'at least three per centum of the largest entire vote for any officer elected at the last preceding election in the said electoral district or division for which said nomination papers are designed to be made;' and this percentage is sixty-one or sixty-two. . . . We therefore adjudge the nomination papers of Edwin J. King to be invalid".

To the same effect is In re Nomination in West Mahanoy Twp., 24 Schuyl. L. R. 1.

In Commonwealth, ex rel., v. Fuller, Secy. of Com., 30 Pa. C. C. 449, the court said:

"The secretary may learn 'the largest entire vote for

any officer elected at the last preceding election' from the files in his office, and by simple multiplication ascertain whether the paper has the requisite number of signatures attached. If it has not, the nomination paper is defective and he is enjoined from filing it."

In our opinion the word "defective" as used in the foregoing opinion means "void" when taken in connection with the rest of the sentence, "and he is enjoined from filing it." If the paper were simply defective, he would have to file it and the petitioner would have the right to amend, but when it is void he is enjoined from filing it.

In view of all of the existing law on this subject we have no recourse but to sustain the exceptions of the exceptant.

### Order

Now, to wit, October 19, 1935, for the reasons hereinbefore set forth, exceptions are sustained and the nomination petition of C. B. Cobb to have his name placed upon the official ballot for the general election of 1935 as the candidate of the Progressive Party or Policy for the office of County Commissioner in Wayne County is decreed to be invalid, void and of no effect. Costs of these proceedings to be paid by respondent C. B. Cobb.